UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VIRGINIA DAVIS,<br><br>   Plaintiff,<br><br>v.<br><br>COLLEEN HUMBLE, Officer KAKU, LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>   Defendants. | 2:07-CV-1643-RCJ-(LRL)<br><br>**ORDER** |

  This is a § 1983 action against Defendants Officers Humble and Kaku and Las Vegas Metropolitan Police Department ("Las Vegas Metro," collectively, "Defendants") for excessive force. Presently before the Court is Defendants' Motion for Summary Judgment (#54). Plaintiff Virgina Davis ("Plaintiff"), acting pro se, filed an opposition (#59) and Defendants replied (#60). The Court held a hearing on May 10, 2010. Because the officers have qualified immunity and Las Vegas Metro may not be held vicariously liable, the Court now GRANTS Defendants' Motion for Summary Judgment (#54).

### I. Background

On December 14, 2005, officers of Las Vegas Metro arrested Plaintiff for driving without a valid driver's license. Plaintiff was a 50-year-old woman at the time of her arrest.[1]

---

[1] Defendants incorrectly calculate Plaintiff's age to be 59. Plaintiff was born on April 13, 1955. (Def.'s Mot. for Summ. J. (#54) Ex. A 3:12–18). This makes her 50 years old at the time of her arrest and 54 years old at the time Defendants submitted their motion.

1

(*See* Def.'s Mot. for Summ. J. (#54) Ex. A 3:12–18). Plaintiff's account of the events following her arrest is as follows. Plaintiff was crying when she arrived at the Clark County Detention Center (the "CCDC"). (*Id.* at 37:9–22). Officer Humble called Plaintiff over to her and asked Plaintiff why she was crying. (*Id.* at 37:24–38:7). Plaintiff explained that she was upset because her mother had a massive heart attack and she felt ashamed for putting herself in a position where she might miss her flight to see her mother. (*Id.* at 37:8–22).

Officer Humble then asked Plaintiff if she was wearing a wig. (*Id.* at 39:1). Plaintiff told Officer Humble that she was not. (*Id.* at 39:1–2). Officer Humble said that Plaintiff was wearing a wig and pulled at Plaintiff's hair. (*Id.* at 39:2–3). Plaintiff then admitted that she was wearing a wig. (*Id.* at 39:3–4). Officer Humble ordered Plaintiff to take it off. (*Id.* at 39:4–5). Plaintiff asked if she had to remove her wig. (*Id.* at 39:5). Officer Humble adopted an aggressive demeanor and told Plaintiff to take off her sweater and wig. (*Id.* at 39:6–14). Plaintiff removed her wig. (*Id.* at 39:14).

Initially, Plaintiff testified that Officer Humble ordered her to stand up. When Plaintiff stood up, Officer Humble pushed her back down. Plaintiff kept standing back up and Officer Humble kept pushing her back down. (*Id.* at 39:15–19). But, later, Plaintiff testified that her memory was "fuzzy" as to what Officer Humble ordered her to do and that she was "pretty sure" Officer Humble ordered her to sit down. (*Id.* at 64:5–65:18). Officer Humble swore at Plaintiff and threatened to lose her in jail. (*Id.* at 39:20–40:9).

Officer Humble then ordered Plaintiff to take off her shoes and pick them up. (*Id.* at 40:10–11; 66:13–67:17). Plaintiff bent down to take off her shoes, then looked up at Officer Humble and asked, "ma'am, do you have to talk to me like this?" (*Id.* at 40:11–13). Plaintiff took off her shoes and then asked, "ma'am, do I really have to take off my shoes?" (*Id.* at 40:21–25). Plaintiff admits that she did not comply with Officer Humble's first request to remove her shoes, but did comply with the second request. (*id.* at 66:4–12). Plaintiff did not comply with Officer Humble's request to pick up her shoes. (*Id.* at 67:11–17).

Officer Humble walked away and Plaintiff continued to cry, placing her head in her lap. (*Id.* at 40:25–41:5). Plaintiff then felt Officer Humble and other officers approach her, place their hands on her hands and head, push her head down, pull her hands up in the air, and

2

twist her arms back. (*Id.* at 41:3–16). The officers then asked Plaintiff to pick up her shoes again, but she could not because of the pain in her arm. She tried to pick them up but kept dropping them. (*Id.* at 66:13–21).

The officers marched her back to a jail cell and swore at her. (*Id.* at 41:17–42:1). At some point, the officers placed Plaintiff in handcuffs. (*See id.* at 42:7–15). Plaintiff believed her arm was sprained. (*Id.* at 56:15–18). Her neck was also in pain. (*Id.* at 61:8–62:21). Plaintiff did not complain of her injury to Officer Humble. (Def.'s Mot. for Summ. J. (#54) Ex. C at ¶ 10). Plaintiff asked all night long for medical treatment. The next day, a nurse saw her. (*Id.* at 56:19–57:5). Plaintiff only complained of pain in and limited movement of her right arm. (*Id.* at 57:17–58:15). Plaintiff was released from jail two days later. (*Id.* at 68:12–16).

On January 10, 2008, Plaintiff, acting pro se, filed a complaint with this Court against Defendants. She alleges a claim under 42 U.S.C. § 1983 for violations of her rights under the Eight and Fourteenth Amendments. She alleges that the use of force on her at the CCDC was cruel and unusual punishment and that Defendants acted with deliberate indifference to her medical needs. She also alleges that Officers Humble and Kaku acted with malice. (Compl. (#6)).

II. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact and the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "'[A] material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.'" *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

3

significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### III. ANALYSIS

**A.  Defendant is entitled to judgment as a matter of law on Plaintiff's claim for violation of the Eighth Amendment.**

As Defendants state, the Eighth Amendment is not applicable until a subject is convicted and sentenced. *See Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989). Plaintiff does not oppose on Eighth Amendment grounds. Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's claim based on violation of the Eighth Amendment.

**B.  Defendant is entitled to judgment as a matter of law on Plaintiff's claim for excessive force under the Fourth Amendment.**

Though Plaintiff did not cite to the Fourth Amendment, her claim may be interpreted as one for excessive force in violation of the Fourth Amendment, applicable to the States via the Fourteenth Amendment. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979).

///

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To decide if qualified immunity applies, courts must determine whether the allegations or facts (depending on the state of the proceedings) make out a Constitutional violation and whether the Constitutional right was clearly established. *Pearson*, 129 S. Ct. at 815–16. Courts may address either prong of the qualified immunity test first. *Id.* at 818. A right may be clearly established in the absence of a ruling declaring the very action unlawful. Instead, in light of pre-existing law, the unlawfulness of the action must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The Fourth Amendment gives Plaintiff a right to be free from unreasonable seizures of her person. Neither Defendants nor Plaintiff have provided any case law that more specifically applies to these circumstances.[2] The Court need look no further. Defendants' actions were objectively reasonable. Plaintiff had lied to Officer Humble and disobeyed her orders. Plaintiff was emotional. Officer Humble would have put herself at risk if she bent over to pick up Plaintiff's shoes herself. (*See* Def.'s Mot. for Summ. J. (#54) Ex. C at ¶ 7). Plaintiff refused to pick them up, so Officer Humble and other officers restrained Plaintiff by grabbing her head and arms. Defendants actions were not unreasonable under clearly established law.

C. **Defendant is entitled to judgment as a matter of law on Plaintiff's claim for deliberate indifference under the Fourteenth Amendment.**

Jail officials violate a pretrial detainee's rights under the Fourteenth Amendment "if they are deliberately indifferent to his serious medical needs." *Anderson v. County of Kern*, 45 F.3d 1310, 1313, 1316 (9th Cir. 1995). Mere negligence does not establish a constitutional violation. *Id.* at 1316. Jail officials act with deliberate indifference if their action "constitutes an infliction of pain or a deprivation of the basic human needs, such as adequate food,

---

[2] Defendants cite at length *Hudson v. McMillian*, 503 U.S. 1 (1992). This case involved an excessive force analysis regarding a *prisoner's* right to be free from cruel and unusual punishment under the *Eighth Amendment*. *Id.* at 4.

5

clothing, shelter, sanitation, and medical care" and the infliction of pain is unnecessary and wanton. *Id.* at 1312–13, n.1 (applying the same standard for Eighth Amendment and Fourteenth Amendment, but noting the standards could possibly diverge). "The test for whether a prison official acts with deliberate indifference is a subjective one: the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 1313 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Court must decide whether it was clearly established at the time of the incident that the jail officials' actions constituted deliberate indifference. If not, they are entitled to qualified immunity. First, Plaintiff has cited to no authority establishing that, objectively, a jail official causes excessive risk to a detainee's health by not providing medical treatment for a sprained arm until the next day. Given the nature of her injury and given that a nurse saw to it the next day, the jail officials did not act to deprive Plaintiff of basic medical care. Second, Plaintiff has alleged no facts that suggest Defendants were subjectively aware of any excessive risk to her health. Though Plaintiff testified that she asked for medical treatment all night, she does not provide any evidence as to whom she asked. There is no indication that Officer Humble or Officer Kaku were aware of her requests for medical treatment. Therefore, Officers Humble and Kaku are protected by qualified immunity and entitled to judgment as a matter of law on Plaintiff's claim for deliberate indifference.

**D. Las Vegas Metro is not subject to municipal liability because Plaintiff produced no evidence of a policy or custom that violated her rights.**

Las Vegas Metro may only be directly liable for a § 1983 claim; there is no vicarious liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, for Las Vegas Metro to be liable, Plaintiff must show that her rights were violated as a result of its policy or custom. *Id.* at 694. Plaintiff has completely failed to produce any evidence that her civil rights were violated due to a policy or custom of Las Vegas Metro. Therefore, Las Vegas

Metro is entitled to judgment as a matter of law.[3]

### E. Plaintiff has not shown justification to allow her additional discovery to oppose Defendants' motion for summary judgment.

Plaintiff argues that she cannot adequately oppose Defendants' motion because she failed to conduct discovery. (Pl.'s Opp'n (#59) 9:24–12). She requests 120 days of additional discovery so she can obtain affidavits from her medical care providers. (Id. at 11:8–12). She failed to conduct discovery due to her lack of understanding of civil procedure. (Id. at 10:2–15).

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Fed. R. Civ. P. 56(f). The party seeking more discovery must show what facts she hopes to discover that will raise material issues of fact and that such evidence exists. *Terrel v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).

Plaintiff has failed to provide justification for denying Defendants' motion or allowing her additional time to obtain affidavits. Affidavits of her medical providers are not relevant to this motion. They will not add any evidence regarding Defendants' use of force on Plaintiff and subsequent treatment of her medical condition. Plaintiff's deposition is on record and provides Plaintiff with her best evidence to support her claims. Furthermore, the Court has Officer Humble's affidavit and a video recording of the incident on record. Reopening discovery would be futile. Finally, Plaintiff had ample opportunity to conduct discovery, but failed to do so. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion."). "[A] *pro se* litigant, like any other litigant, must comply with the Federal Rules of Civil Procedure." *Sindram v. Merriwether*, 506 F. Supp. 2d 7, 11 (D.D.C. 2007). Therefore, the Court will not

---

[3] Defendants also assert that Las Vegas Metro, as a municipality, is immune from punitive damages. (Def.'s Mot. for Summ. J. (#54) 18:23–19:3). Municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981).

7

deny Defendants' motion or delay its ruling so that Plaintiff may conduct additional discovery.

### IV. Conclusion

Accordingly, IT IS ORDERED that Defendants' Motion for Summary Judgment (#54) is GRANTED.

The Clerk of the Court shall enter judgment accordingly.

DATED: This 9th day of June, 2010.

_____
Robert C. Jones
UNITED STATES DISTRICT JUDGE

8